# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR SMALLS, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:18-CV-1142(JCH) |
| v. | : | |
| | : | |
| SCOTT SEMPLE, ET AL., | : | APRIL 30, 2019 |
| Defendants. | : | |

## INITIAL REVIEW ORDER

The plaintiff, Victor Smalls ("Smalls"), is confined at Corrigan Correctional

Institution ("Corrigan").  He has filed pro se a Complaint pursuant to section 1983 of title

42 of the United States Code.  He names as defendants Commissioner Scott Semple;

District Administrator Angel Quiros; Warden Chapdelaine; Deputy Wardens Mudano

and Guadarrama; Captains Anaya, Baymon, and Black; Lieutenants Prior, Michael

Danek, and Michael White; Correctional Officers Charter, Cheney, Paxton, Putnam,

Swol, Usluca, and Kelly; and Nurses Markland and Jane Doe.

## I.     STANDARD OF REVIEW

Pursuant to section 1915A(b) of title 28 of the United States Code, the court must

review prisoner complaints against governmental actors and "dismiss . . . any portion of

[a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may

be granted," or that "seeks monetary relief from a defendant who is immune from such

relief."  Id.  This standard of review "appl[ies] to all civil complaints brought by prisoners

against governmental officials or entities regardless of whether the prisoner has paid [a]

filing fee."  Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks

and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)). Although courts have an obligation to interpret "a pro se complaint liberally," see Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted), a complaint must still include sufficient factual allegations to meet the standard of facial plausibility.

## II.  FACTS

On August 2, 2016, Smalls was confined at MacDougall-Walker Correctional Institution ("MacDougall-Walker"). See Compl. (Doc. No. 1) ¶ 16. During the first shift on that date, Smalls asked Captain Black why he been had regressed back to Phase One of the Security Risk Group Segregation Program even though he had not received a disciplinary report. See id. ¶ 38. Black responded that, as long as he was the Captain, he would ensure that Smalls never fully progressed through the Security Risk Group Segregation Program. See id. Black also suggested that, if Smalls knew what was good for him, he would stop "writing things up." See id. ¶ 39. Smalls interpreted

this statement to be a comment on the fact that he had filed a grievance about his regression back to Phase One and his concerns for his safety due to officer misconduct. See id. ¶ 40.

During second shift on August 2, 2016, Smalls asked Correctional Officers Putnam, Cheney, and Swol to contact a shift supervisor to find out why he had been placed on Phase One of the Security Risk Group Segregation Program despite the fact that he had not received a disciplinary report. See id. ¶ 16. Cheney and Putnam began to verbally antagonize Smalls. See id. ¶ 17. When Smalls swore at Putnam and told him to do his job, Putnam suggested that Smalls cover his cell window so that the Cell Extraction Team could come and mess up Smalls. See id. ¶¶ 18-19. Smalls did not react to the verbal abuse. See id. ¶ 21.

A short time later, Smalls observed Putnam "slam[ ] [a] handcuffed prisoner on the floor" outside his cell. See id. ¶ 22. Cheney then asked Smalls if he wanted to make a telephone call. See id. ¶ 23. Cheney placed Smalls in full restraints and escorted him to the phone booth. See id. ¶ 24. Smalls brought a book with him to return to another inmate. See id. ¶ 25. When Cheney became aware of the book, he gave Smalls a choice of putting the book down or being slammed to the floor. See id. ¶ 27. Smalls chose to put the book on a table. See id. ¶ 29.

At approximately 7:40 p.m., Cheney escorted Smalls back to his cell from the phone booth. See id. ¶ 30. Smalls asked to report the threatening remarks made by Putnam and Cheney to a supervisor, but Cheney called Smalls a coward and left. See id. ¶¶ 31-32. Smalls then attempted to use the intercom in his cell, but it would not work. See id. ¶ 32.

Putnam came to Smalls' cell, called Smalls a rat for trying to report him, and suggested that Smalls might be harmed in some way because he was a rat.  See id. ¶ 34.  In response, Smalls covered the window in the cell door and then sat on his bed. See id. ¶ 35.  He overheard Cheney and Putnam comment that it was time to exterminate a rat.  See id. ¶ 36.

Smalls sat on his bunk for approximately fifteen minutes.  See id. ¶ 46.  Smalls' cellmate was also in the cell and informed Smalls that he thought prison officials were going to spray mace into the cell.  See id.  Smalls then observed the trap in the cell door open and a "mist of mace" coming through the trap.  See id. ¶ 47.  Smalls claims that during the next forty-five minutes, Lieutenants Danek and White, and Correctional Officer Charter deployed a total of five or more bursts of mace into the cell.  See id. ¶¶ 48-50.

The Cell Extraction Team, including Putnam, entered the cell.  Putnam immediately punched Smalls in the face.  See id. ¶ 51.  Prior to entering the cell, the Cell Extraction Team failed to turn on the lights in the cell.  See id. ¶ 50.  Officers forced Smalls to lie face down on the bottom bunk.  See id. ¶ 51.  Putnam then began to punch Smalls in the face and the back of the head, grabbed his shirt, and pulled it around Smalls' neck to choke him.  See id.  When Smalls attempted to cover his face, White and Danek sprayed him again with mace.  See id.

Putnam then put both of his knees on Smalls' back and applied pressure to it. See id. ¶ 51.  Putnam continued to punch and choke Smalls.  See id.  Correctional Officers Cheney, Paxton and Usluca punched Smalls in his ribs and bent his wrists back into a painful position.  See id.  Swol twisted and bent Smalls' toes.  See id.

4

Usluca placed handcuffs on Smalls' wrists in a tight manner, and Swol placed leg irons on Smalls' ankles in a tight manner.  See id. ¶ 52.  A tether chain connected the handcuffs to the leg irons.  See id.  Someone put a "universal precaution safety veil" over Smalls' head.  See id.

White supervised the escort of Smalls to cell B-24.  See id.  Under White's supervision, Swol, Usluca, and other officers strip-searched Smalls and placed him in a new t-shirt, boxers, socks, and a jumpsuit.  See id. ¶ 52.  Neither White nor Swol nor Officer Usluca permitted Smalls to shower to remove the residue of mace from his body.  See id. ¶ 52.  Swol placed handcuffs on Smalls' wrists and leg irons on Smalls' ankles and connected the restraints with a tether chain.  See id.  Swol applied the restraints tightly, which caused Smalls to experience pain in his back, wrists, and ankles.  See id.

Nurse Doe then flushed Smalls' eyes with water, checked the restraints, and determined the restraints had not been attached too tightly.  See id. ¶ 53.  Shortly after Doe left Smalls' cell, Warden Chapdelaine and Deputy Wardens Mudano and Guadarrama arrived.  See id. ¶ 54.  In response to Smalls' pleas for a shower and the adjustment of his restraints, Chapdelaine and Mudano laughed and walked off; Guadarrama stated that he did not care that Smalls was in pain and that Smalls did not deserve a shower.  See id.

When Captains Anaya and Baymon stopped at Smalls' cell, Smalls asked them for toilet paper and soap.  See id. ¶ 54.  In response, they laughed, and Anaya suggested that Smalls use his hands.  See id. ¶ 54.  Smalls could not use the toilet "without unreasonably risking further contamination to his genital area."  See id. ¶ 55.

5

When Smalls attempted to urinate, his genitals burned because the defendants had not permitted Smalls to wash the mace residue from his body.  See id. ¶ 56.

When third shift began at 11:00 p.m., Correctional Officer Kelly performed a routine tour of Smalls' housing unit.  See id. ¶ 57.  Smalls stopped Kelly and requested that his handcuffs be adjusted because they were too tight and painful.  See id.  Kelly refused to adjust the restraints and told Smalls that he deserved to be chained up because he was a rat.  See id.  At 1:00 a.m. on August 3, 2016, Smalls asked Lieutenant Lapila to adjust his restraints.  See id. ¶ 58.  Lapila summoned correctional officers to loosen Smalls' restraints.  See id. ¶ 58.

Kelly falsely noted on the restraint checklist that Smalls had been disruptive.  See id. ¶ 59.  These false accusations resulted in Smalls' continued confinement in restraints.  See id.  Kelly refused to provide Smalls with breakfast because Smalls had put Kelly's "brothers through . . . bullshit" the night before.  See id. ¶ 59.

At 10:00 a.m., officers escorted Smalls to a cell in the restrictive housing unit due to a pending investigation into Smalls' possible placement on administrative segregation.  See id. ¶ 60.  Officers did not provide Smalls with lunch.  See id.  Smalls right eye remained swollen.  See id.  At approximately 3:00 p.m., White, Prior, and Danek arrived at Smalls' cell and cracked jokes about the force used against Smalls during the extraction of Smalls from his cell the day before.  See id. ¶ 61.  They threatened to harm Smalls because he had "put them through that bullshit."  See id. ¶ 61.  The three lieutenants approved of the fact that officers had not been feeding Smalls and did not attempt to facilitate medical treatment in response to Smalls' complaints of head pain and bleeding from cuts on wrists and ankles.  See id.

At 4:00 p.m., Smalls received a meal, but did not receive a utensil with which to eat it.  The restraints prevented him from feeding himself using his hands.  See id. ¶ 62.  A correctional officer who was responsible for picking up trash refused to provide Smalls with a utensil to eat his meal, and Smalls did not eat his meal.  See id. ¶ 62.

At 8:20 p.m. on August 3, 2016, officers removed Smalls from all restraints.  See id. ¶ 63.  During the twenty-four-hour period he was on in-cell restraints, prison officials did not permit him to shower in order to remove the residue of mace on his body.   See id. ¶ 64.  Nurse Markland did not provide Smalls with medical treatment for his painful eye/head injury or the cuts on his wrists and ankles.  See id. ¶ 65.

Smalls filed a grievance regarding the excessive use of force by White, Danek, Putnam, Cheney, Paxton, Swol, Charter, and Usluca.  Chapdelaine affirmed the actions of these officers.  See id. ¶ 66.  Quiros denied the appeal of Chapdelaine's decision.  See id. ¶ 67.

In response to a request for medical treatment for severe headaches, a medical provider examined Smalls on August 7, 2016.  See id. ¶ 68.  The medical staff member provided Smalls with bandages and ointment for his cuts and medication to treat his symptoms of pain.  See id. ¶ 69.  Smalls suffered mental distress as a result of the use of force by White, Danek, Putnam, Cheney, Paxton, Swol, Charter, and Usluca.  See id. ¶ 70.

## III.   DISCUSSION

Smalls claims that the defendants violated his rights under the Eighth and First Amendments.  Smalls seeks compensatory damages from all defendants, declaratory relief from defendants Semple, Quiros, Chapdelaine, Mudano, Guadarrama, Anaya,

Baymon, Black, White, Danek, and Prior, and injunctive relief from defendant Semple in his official capacity. <u>See</u> Compl. at 28-29.

      A.    <u>Official Capacity Money Damages</u>

Smalls sues the defendants in their individual and official capacities and seeks monetary relief.  The Eleventh Amendment bars the claims against the defendants in their official capacities for compensatory damages. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985) (holding that Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979) (holding that Section 1983 does not override a state's Eleventh Amendment immunity).  Accordingly, the claims for monetary relief against the defendants in their official capacities are dismissed, pursuant to section 1915A(b)(2).

      B.    <u>Declaratory Relief</u>

Smalls seeks a declaration that Semple, Quiros, Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Black, Prior, Danek, and White violated his Eighth Amendment rights by failing to protect him from harm, a declaration that Nurses Doe and Markland violated his Eighth Amendment rights by denying him medical treatment, and a declaration that Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, White, Cheney, Putnam, Swol, and Kelly violated his First Amendment right "not to be retaliated against."  Compl. at 28.  Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships."  <u>Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.</u>, 697 F.3d 59, 66 (2d Cir. 2012).  Thus, declaratory

relief operates in a prospective manner to allow parties to resolve claims before either side suffers great harm.  See In re Combustion Equip. Assoc. Inc., 838 F.2d 35, 37 (2d Cir. 1988).

In Ex Parte Young, 209 U.S. 123 (1908), the Supreme Court held that an exception to the Eleventh Amendment's grant of sovereign immunity from suit existed to permit a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law.  Id. at 155-56.  However, the exception to Eleventh Amendment immunity does not apply to claims against state officials seeking declaratory or injunctive relief for prior violations of federal law.  See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (holding that the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of Young . . . to claims for retrospective relief.") (citations omitted).

The allegations in the Complaint relate to incidents that occurred at MacDougall-Walker in August 2016.  Smalls is currently confined at Corrigan.  Smalls' request for declarations that the defendants violated his federal constitutional rights in 2016 at MacDougall-Walker cannot be characterized as "prospective."  Thus, Smalls' requests for declaratory relief do not meet the exception to the Eleventh Amendment immunity set forth in Ex Parte Young.

Absent a request for prospective relief to remedy ongoing violations of federal law, a declaration that the defendants violated Smalls' First and Eighth Amendment rights or engaged in illegal conduct in the past is barred by the Eleventh Amendment.

9

See Green, 474 U.S. at 7.  The requests for declaratory relief are dismissed.  See 28

U.S.C. § 1915A(b)(1).

      C.     Injunctive Relief

The Complaint includes two requests for injunctive relief.  Smalls seeks a

permanent injunction requiring Semple to add "safer policies Administrative Directives

concerning in-celling practices i.e., restraint checklist, restraint checks, bathroom

breaks, and videoing (recording) of all actions of conduct."  Compl. at 29.  Smalls also

seeks a permanent injunction requiring all defendants to adhere to the Administrative

Directive concerning in-cell restraints.  Id. at 28.

"An injunction is a drastic and extraordinary remedy, which should not be granted

as a matter of course."  Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165

(2010) (citation omitted).  "The party requesting permanent injunctive relief must

demonstrate (1) irreparable harm . . . and (2) actual success on the merits."  Ognibene

v. Parkes, 671 F.3d 174, 182 (2d Cir. 2012).  The party seeking a permanent injunction

must also demonstrate that no adequate remedy at law is available.  See N.Y. State

Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989) ("Generally, to obtain

a permanent injunction a party must show the absence of an adequate remedy at law

and irreparable harm if the relief is not granted.").

    A plaintiff must establish standing to sue for the relief requested.  Standing

under Article III of the Constitution requires that, (1) an injury be concrete,

particularized, and actual or imminent; (2) fairly traceable to the challenged action; and

(3) redressable by a favorable ruling.  Am. Civil Liberties Union v. Clapper, 785 F.3d

787, 800 (2d Cir. 2015).  Here, Smalls has failed to allege actual or imminent injury

sufficient to afford him standing to seek the broad injunctive relief he requests.  Smalls

has not alleged that the defendants have engaged in continuing unconstitutional

conduct, nor is Smalls still confined at MacDougall-Walker.  Moreover, Smalls has not

alleged that he is likely to suffer, in the future, from placement in-cell restraints in a

manner that is contrary to the Administrative Directives governing the use of such

restraints.  Absent such allegations, the request for injunctive relief addressed to all

defendants is dismissed.

    With regard to the request for relief addressed to defendant Semple, section

3626(a)(1) of title 18 of the United States Code provides that, "[p]rospective relief in any

civil action with respect to prison conditions shall extend no further than necessary to

correct the violation of the Federal right of a particular plaintiff or plaintiffs."  Additionally,

a district court is precluded from "grant[ing] or approv[ing] any prospective relief unless

[it] finds that such relief is narrowly drawn, extends no further than necessary to correct

the violation of the Federal right, and is the least intrusive means necessary to correct

the violation of the Federal right."  Id.  The relief sought by Smalls, which includes an

order directing the Commissioner of the Department of Correction to draft and

implement new policies and directives related to the conduct of correctional employees,

and an order, which would seemingly require the court's involvement in day to day

operations of a prison facility, extends further than necessary and is not the least

intrusive means necessary to correct the alleged constitutional violations.  The court

concludes there is no arguable legal or factual basis for the requests seeking

permanent injunctive relief.  The requests for injunctive relief are dismissed.  See 28

U.S.C. § 1915A(b)(1).

D.   <u>Eighth Amendment – Excessive Force</u>

The Complaint includes allegations that three defendants deployed an excessive number of bursts of mace into Smalls' cell, other defendants entered Smalls' cell and punched and choked him as he lay defenseless on the bunk, and two defendants applied restraints to Smalls' ankles and wrists in a tight manner.  <u>See</u> Compl. ¶¶ 79-84. In Count Three of the Complaint, Smalls contends that this conduct constitutes various forms of excessive force.  <u>Id.</u>

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  In <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances.  When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim. <u>See</u> <u>Romano v. Howarth</u>, 998 F.2d 101, 105 (2d Cir. 1993).

To meet the objective component, the inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." <u>Hudson</u>, 503 U.S. at 8 (internal quotation marks and citation omitted).  The extent of the inmate's injuries as a result of the defendant's conduct is not a factor in determining the objective component.  <u>See</u> <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances); <u>Hudson</u>, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm,

contemporary standards of decency are always violated . . . whether or not significant injury is evident.").

The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7 (citing Whitley v. Albers, 475 U.S. 312, 320-321 (1986)). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotations and citation omitted).

Smalls has alleged that he was sitting on his bunk in his cell when defendants Danek, White, and Charter deployed at least five bursts of mace through the trap in the cell door. Compl. ¶¶ 46-50. After entering the cell, defendants Putnam, Usluca, Paxton, Cheney, and Swol punched and choked Smalls, and twisted his wrists and toes as he lay defenseless on his bunk. Id. ¶ 51. After the assault abated, defendants Swol and Usluca applied restraints too tightly to Smalls' ankles and wrists. Id. ¶ 52.

The court concludes that a reasonable inference could be drawn that the various methods of force used by the defendants constituted an effort to cause Smalls harm rather than an effort to maintain discipline or restore order. See Ortiz v. Bennett, No. 3:17-CV-593(JAM), 2017 WL 3401259, at *2 (D. Conn. Aug. 8, 2017) (inmate's allegations of correctional officers "pushing him against the wall, bouncing his head against the wall, twisting his wrists[,] and applying the handcuffs so tight that his wrists began bleeding" stated plausible claim of excessive force); Al-Bukhari v. Semple, No.

13

16-CV-1428, 2017 WL 2125746, at *4 (D. Conn. May. 16, 2017) (finding that a prisoner stated an Eighth Amendment excessive force claim because he alleged that the officers, inter alia, "sprayed him with a harmful chemical agent, even though [he] had not been resisting their efforts to escort him out of the cell"); Cicio v. Lamora, 9:08-CV-431 (GLS/DEP), 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010) (denying summary judgment on plaintiff's claim that defendant correction officer hit inmate several times after he was subdued and helpless, despite "seemingly overwhelming" contradictory evidence, including the fact that plaintiff suffered only a minor bruise), report and recommendation adopted, No. CIVA9:08-CV-431GLS, 2010 WL 1063864 (N.D.N.Y. Mar. 22, 2010).  The Eighth Amendment claims of excessive force will proceed against defendants Danek, White, Charter, Putnam, Cheney, Usluca, Paxton, and Swol in their individual capacities.

      E.      Eighth Amendment – Failure to Intervene and to Protect

Smalls alleges that defendants Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, and White were present during the cell extraction, but they failed to intervene to stop other defendants from using excessive force against him.  Compl. ¶¶ 72, 76.  In Counts One and Two of the Complaint, Smalls contends that these defendants both failed to protect him from harm and failed to intervene to protect him from harm.  Id.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody" and precludes prison officials from using "excessive force" against inmates.  Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted).  Furthermore, it is well-

established in the Second Circuit that a law enforcement officer "is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it."  Figueroa v. Mazza, 825 F.3d 89, 106 (2d Cir. 2016) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11–12 (2d Cir. 1988); see also Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."); Moore v. Parsons, No. 3:18-CV-00507 (CSH), 2018 WL 1882858, at *6 (D. Conn. Apr. 19, 2018) (concluding inmate had "stated a valid claim for failure to intervene against" a correctional officer and lieutenant).

To state a claim of failure to protect or deliberate indifference to health or safety under the Eighth Amendment, an inmate must plausibly allege facts to show both an objective and a subjective element.  To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[ ] necessit[y]" or a "substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. at 834 (internal quotation marks and citations omitted).  To meet the subjective element, Smalls must allege that the defendants possessed culpable intent; that is, the officials knew that Smalls faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action.  See id. at 834, 847.  Thus, an allegation of "mere negligen[t]" conduct is insufficient.  Id. at 835. Rather, the subjective element requires that the inmate allege

that defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).

To state a claim for a prison official's failure to intervene, an inmate must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." Jean–Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), aff'd sub nom. Jean-Laurent v. Wilkerson, 461 F. App'x. 18 (2d Cir. 2012). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality."  Figueroa, 825 F.3d at 106 (quoting O'Neill, 839 F.2d at 11–12).

Smalls has asserted sufficient allegations regarding the injuries he sustained as a result of the force against him to meet the objective component of the Eighth Amendment standard.  He has also plausibly alleged that defendants Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, and White were aware of the use of force by other defendants, had sufficient time to intervene, but took no steps to abate the use of force or harm suffered by him.  Additionally, Smalls has asserted sufficient facts to meet the subjective prong of the Eighth Amendment standard for deliberate indifference to safety and the failure to intervene.  The claims of deliberate indifference to safety/failure to protect from harm and failure to intervene will proceed against defendants Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, and White in their individual capacities.

16

F.       Eighth Amendment – Conditions

Smalls asserts a number of allegations related to the conditions in his cell during his confinement on in-cell restraints.  Smalls alleges that he did not receive food or was unable to eat any food for the entire twenty-four-hour period that he was on in-cell restraints.  Id. ¶ 62.  Smalls also asserts that the handcuffs and leg irons were very tight and caused him pain and discomfort, and that the defendants failed to take steps to loosen them.  Id. ¶¶ 52, 54, 57.  Smalls alleges that, during his confinement on in-cell restraints, none of the defendants who visited his housing unit ever permitted him to shower in order to remove the mace residue from his body.  Id. ¶ 56.  Smalls states that he was not able to use the bathroom without urinating on himself and that certain defendants denied him toilet paper and soap.  Id. ¶¶ 54-56.  Smalls contends that these conditions violated his Eighth Amendment rights.

To state a claim of deliberate indifference to health or safety due to an unconstitutional condition of confinement, an inmate must plausibly allege sufficient facts to show both an objective and a subjective element.  To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[ ] necessit[y]" or a "substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. at 834 (internal quotation marks and citations omitted).  The Supreme Court has identified the following basic human needs of an inmate: food, clothing, shelter, medical care, warmth, safe and sanitary living conditions and exercise.  See Wilson v. Seiter, 501 U.S. 294, 304 (1991); DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989); Rhodes v. Chapman, 452 U.S. 337, 348 (1981).

17

To meet the subjective element, Smalls must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that Smalls faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action.  See id. at 834, 837.  Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk.  See Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003).

Although each condition experienced by Smalls during his confinement on in-cell restraints might not individually rise to the level of a serious deprivation of a human need, together the conditions plausibly allege a serious deprivation of a human need. See Wilson, 501 U.S. at 304 ("Some conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.") (citations omitted); Boadi v. City of New York, No. 12–CV–2456, 2012 WL 3062063, at *4 (E.D.N.Y. July 26, 2012) (finding that a complaint alleging the deprivation of an incarcerated individual's ability to "eat, drink, or use the bathroom for 18 consecutive hours" is sufficient to state a claim for deliberate indifference).  As to the subjective requirement, Smalls alleged the following: (1) that Chapdelaine, Mudano, and Guadarrama laughed and ignored pleas for a shower and for his restraints to be adjusted, see Compl. ¶ 54; (2) that Anaya and Baymon laughed and ignored direct requests for toilet paper and soap, id.; (3)  that Prior, Danek, and White laughed at Smalls' pain and taunted him

regarding his lack of food, id. ¶ 61; (4) that Kelly deliberately withheld meals from Smalls and responded to Smalls' complaints about his painful restraints by telling Smalls he deserved it, id. ¶¶ 57, 59; and (5) Swol and Usluca, along with other correction officers, failed to follow procedure to allow Smalls to shower and decontaminate despite knowing that Smalls had been sprayed with mace, id. ¶ 52.  Thus, the conditions of confinement claims will proceed as to defendants Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, White, Kelly, Swol, and Usluca in their individual capacities.

>   G.   Eighth Amendment – Medical Needs

Smalls alleges that Nurse Jane Doe flushed his eyes, but she refused to address his complaints about the pain caused by the tightness of his restraints.  Compl. ¶ 53. He contends that the restraints were extremely painful and caused his wrists to swell and turn colors.  Id. ¶ 54.  Smalls alleges that, during his confinement on in-cell restraints, Nurse Markland refused to provide him with medical treatment for his painful eye/head injury or the cuts on his wrists and ankles.  Id. ¶ 65.  Smalls alleges that, at 3:00 p.m. on August 3, 2016, Danek, White and Prior visited him at his cell.  Id. ¶ 61. Smalls claims that he asked these three defendants to contact the medical department on his behalf because he was experiencing severe head pain and the cuts around his wrists and ankles were bleeding.  Id.  Smalls alleges that Doe, Markland, White, Danek, and Prior were deliberately indifferent to his serious medical conditions.

The court concludes that the allegations regarding the denial of treatment for Smalls' injuries by Danek, White, Pryor, Doe, and Markland state plausible claims of deliberate indifference to medical needs under the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (("[D]eliberate indifference to serious medical

needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'

. . . whether the indifference is manifested by prison doctors in response to the

prisoner's needs or by prison guards in intentionally denying or delaying access to

medical care or intentionally interfering with the treatment." (footnotes and citation

omitted)); Jean v. Barber, No. 9:09-cv-430 (MAD/GHL), 2011 WL 2975218, at *5

(N.D.N.Y. July 21, 2011) (noting that non-medical personnel such as guards are

deliberately indifferent to an inmate's medical needs where "they intentionally deny or

delay access to medical care") (citations omitted); Baumann v. Walsh, 36 F. Supp. 2d

508, 512 (N.D.N.Y.1999)(Non-medical prison personnel engage in deliberate

indifference where they "intentionally delayed access to medical care when the inmate

was in extreme pain and has made his medical problem known to the attendant prison

personnel").  The allegations of deliberate indifference to medical needs will proceed

against defendants Danek, White, Pryor, Doe, and Markland in their individual

capacities.

In Count Seven of the Complaint, Smalls alleges that Chapdelaine, Mudano,

Guadarrama, Anaya, Baymon, and Kelly refused to provide him with medical treatment

for a serious medical need in violation of the Eighth Amendment.  Compl. ¶¶ 95-

99. There are no factual allegations that suggest that Smalls sought medical treatment

from any of these defendants or that they were deliberately indifferent to his medical

needs.  Thus, the conclusory allegations that Chapdelaine, Mudano, Guadarrama,

Anaya, Baymon, and Kelly exhibited indifference to Smalls medical needs are

dismissed.  See 28 U.S.C. § 1915A(b)(1).

H.    First Amendment Retaliation Claim

Smalls alleges that Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, and White refused to provide him with medical treatment during his confinement on in-cell restraints, defendant Kelly refused to feed him during his confinement on in-cell restraints, and defendant Kelly completed the restraint checklists using inaccurate information about his behavior.  See Compl. ¶¶ 101-102, 104.  Smalls contends that these defendants engaged in this conduct "as a result of" or "because of his involvement in" the cell extraction incident on August 2, 2016, and that this conduct constitutes retaliation.  See id.  Smalls also contends that defendants Cheney, Putnam, and Swol used excessive force against him in retaliation for his filing of a grievance regarding their misconduct towards prisoners in the security risk group program, and that defendant Swol applied the restraints too tightly to his wrists and ankles in retaliation for his filing of the same grievance.  See id. ¶¶ 102-103.

An inmate asserting First Amendment retaliation by a defendant bears the burden of "establish[ing] (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the [inmate], and (3) that there was a causal connection between the protected speech and the adverse action."  Holland v. Goord, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks and citation omitted). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).

There are no facts alleged to suggest that defendants Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, White, or Kelly denied Smalls medical treatment or food, or fabricated the restraint checklist in response to the exercise of any

First Amendment protected activity or speech by Smalls.  In the absence of such allegations, Smalls fails to plead the second requirement of a retaliation claim against defendants Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, White, or Kelly.  The retaliation claims against these defendants are dismissed.  See 28 U.S.C. § 1915A(b)(1).

With regard to the allegations of retaliatory conduct by defendants Cheney, Putnam, and Swol, it is well settled that the filing of a grievance by a prisoner against correctional officers constitutes protected conduct for the purposes of First Amendment claims.  See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) (inmate's "claimed conduct—namely, his filing of a grievance and attempt to find inmates to represent the grievants—is constitutionally protected."); Baskerville v. Blot, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) ("A prisoner's filing of a grievance against a corrections officer is protected by the First Amendment and retaliation in response to such a grievance is an actionable claim.") (citations omitted).  Furthermore, an assault by correctional officers is arguably adverse.  See Girard v. Cuttle, No. 915CV0187TJMDJS, 2018 WL 4190140, at *6 (N.D.N.Y. Aug. 10, 2018) ("An assault clearly qualifies as an adverse action in this context."), report and recommendation adopted sub nom. Girard v. Chuttey, No. 915CV187TJMDJS, 2018 WL 4188431 (N.D.N.Y. Aug. 31, 2018); Baskerville, 224 F. Supp. 2d at 731-32 (finding that a retaliatory assault constitutes adverse action).  Thus, the first two requirements of a retaliation claim have been met.

The Complaint refers to a grievance that Smalls filed, claiming that he had been improperly regressed back to the first phase of the security risk group program and that, correctional staff had been engaging in misconduct.  Compl. ¶¶ 38-41.  The allegations

regarding Smalls' conversation with Black about this grievance suggest that it was filed shortly before the cell extraction incident on August 2, 2016.  Id.  Moreover, Smalls alleged that he communicated his desire to report threats made by Cheney and Putnam, shortly before the cell extraction incident.  Id. ¶¶ 31–36.  The temporal proximity between the filing of the grievance and Smalls request to speak to supervising staff, and the alleged excessive uses of force, creates the necessary causal connection between the two events.  See Espinal v. Goord, 558 F.3d 119, 129 (2d Cir.2009) (holding passage of six months between a prisoner's protected activity and prison guards' alleged beating of him was sufficient to support an inference of causation).

Thus, the court concludes that Smalls has plausibly alleged that Cheney, Putnam, and Swol used excessive force against him in retaliation for his filing a grievance against them.  These retaliation claims, as set forth in paragraphs 102 and 103 of the Complaint, will proceed against defendants Cheney, Putnam, and Swol in their individual capacities.

I.    Supervisory Liability

Smalls alleges that Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Black, Prior, Danek, and White "failed to supervise and enforce C.D.O.C. policies they are charged with making and enforcing when they failed to either actually intervene in the assaults or to correct it after notified and to get medical treatment."  Compl. ¶ 86.  In addition, Smalls alleges that these defendants "failed to . . . discipline any of the defendants [who] violated [his] Eighth and First Amendment rights when they were given notice of their actions."  Id. ¶ 87.

To state a claim for supervisory liability, Smalls must allege facts that would show one or more of the following: (1) the defendants actually and directly participated in the alleged action; (2) the defendants failed to remedy a wrong after being informed of the wrong though a report or appeal; (3) the defendants created or approved a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation or permitted such a policy or custom to continue; (4) the defendants were grossly negligent in their supervision of the officers who committed the constitutional violation; or (5) the defendants were deliberately indifferent to Smalls' rights by failing to act in response to information that unconstitutional acts were occurring.  See Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003).  Smalls must also demonstrate a causal link between the actions of the supervisory official and his injuries.  See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

Smalls' statements contain allegations that are similar to the second, third, and fourth examples of supervisory liability.  Smalls has included specific allegations regarding the involvement of Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, and White in the alleged unconstitutional conditions that arose during his confinement on in-cell restraints.

With regard to defendants Semple and Black, there are no facts alleged that they were present at the scene of the cell extraction or were aware that Smalls had been placed on in-cell restraints.  Thus, there are no factual allegations regarding the direct involvement of defendant Semple or defendant Black in the alleged Eighth Amendment violations.  Furthermore, Smalls does not allege any facts to support his contention that Semple or Black created objectionable policies and permitted the policies to continue or

24

were on notice of the alleged constitutional violations of others but failed to take any action to remedy the violations or discipline any defendant who had violated his rights. Rather, Smalls' statements as they pertain to Semple and Black are conclusory and insufficient to allege a plausible claim of supervisory liability against them.  The claim for failure to supervise is dismissed against defendants Semple and Black pursuant to section 1915A(b)(1) of title 28 of the United States Code.

Smalls alleges that, although defendant Quiros was not directly involved in the various constitutional violations, Quiros did respond to the appeal of the grievance that he filed regarding the alleged use of excessive force by defendants Danek, White, Charter, Cheney, Putnam, Usluca , Paxton, and Swol.  Smalls also alleges that, although Chapdelaine was not directly involved in the Eighth Amendment excessive force claim, she did respond to a grievance filed by Smalls regarding the use of force by other defendants in connection with his extraction.  Thus, defendants Quiros and Chapdelaine were on notice of the alleged use of force.  However, Smalls did not allege any facts as to how Quiros or Chapdelaine failed to remedy a harm he suffered, were grossly negligent in supervising officers, or failed to act in response to information of ongoing constitutional violations.  Instead, Smalls' allegations are focused on Quiros' and Chapdelaine's denials of his administrative grievances.  "[T]he law is well established that 'inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim.'"  Young v. Choinski, 15 F. Supp. 3d 172, 189 (D. Conn. 2014) (quoting Swift v. Tweddell, 582 F.Supp.2d 437, 445–46 (W.D.N.Y.2008)).  Accordingly,

the claims of supervisory liability for excessive force against defendants Quiros and Chapdelaine are dismissed.

     J.     <u>Negligent Failure to Protect/Negligence</u>

In the Fifth Count of the Complaint, Smalls contends that defendants Semple, Quiros, Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Black, Prior, Danek, and White are liable for negligently failing to protect him from assault and for breaching a duty of care to provide him with medical treatment.  <u>See</u> Compl. ¶¶ 88-92.  As indicated above, to state a claim under the Eighth Amendment, an inmate must allege facts to show that the defendant was deliberately indifferent to a risk of harm to his or health or safety or to his or her medical needs.  Allegations of mere negligence by prison officials will not support a claim under the Eighth or the Fourteenth Amendment.  <u>See</u> <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 849 (1998); <u>Farmer</u>, 511 U.S. at 836; <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986)).

To the extent that Smalls is attempting to assert a state law negligence claim against the defendants in their individual capacities, Connecticut law provides that, "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."  Conn. Gen. Stat. § 4–165.  Connecticut courts note that "wanton, reckless, or malicious" acts go beyond gross negligence and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."  <u>Miller v. Egan</u>, 265 Conn. 301, 378-79 (2003).  Thus, state employees are not "personally liable for their negligent actions performed within the scope of their employment."  <u>Id.</u> at 319.

26

Furthermore, "[a]ny person having a complaint for such damage or injury" must "present . . . [the] claim against the state" to the State Claims Commissioner who may authorize an action against the state or a state official.  Conn. Gen. Stat. §§ 4-160(a), 4-165(a).  When filing a lawsuit, the plaintiff must allege that he or she sought "authorization and the date on which it was granted."  Conn. Gen. Stat. § 4-160(c).

Smalls has not asserted that he filed a claim with the Connecticut Claims Commissioner or that he received the required authorization to file suit against the State and its officials.  Accordingly, any negligence claim against the defendants in their individual capacities for monetary damages is barred by statutory immunity under Conn. Gen. Stat. § 4-165, and is dismissed.  See 28 U.S.C. § 1915A(b)(2).

To the extent that Smalls asserts a claim of negligence against the defendants in their official capacities, the request for monetary damages is barred by the doctrine of sovereign immunity.  "The doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from the performance of their duty."  Hultman v. Blumenthal, 67 Conn. App. 613, 620 (2002).  This immunity is applicable to both lawsuits seeking monetary damages against a state as well as to lawsuits seeking monetary damages against a state official in his or her official capacity.  See Miller, 265 Conn. at 313 ("a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state") (internal quotation marks and citation omitted).  There is no allegation that the defendants, in their official capacities, waived their sovereign immunity to be sued as to any negligence claims for monetary damages.  Accordingly, the negligence claim against the defendants in their official

capacity for monetary damages is dismissed as barred by sovereign immunity.  See 28

U.S.C. § 1915A(b)(2).

      K.     State Law Claim – Assault and Battery

      In the excessive force claim of the Complaint (Count 3), Smalls references an

assault and battery.  See Compl. ¶ 82.  The court liberally construes the Complaint as

asserting state law claims of assault and battery.  The court concludes that the

allegations that defendants Danek, White, Charter, Putnam, Usluca, Paxton, Cheney,

and Swol sprayed Smalls with mace, punched him in the body and head, and twisted

his arms and applied handcuffs too tightly to his wrists and ankles are sufficient to meet

the requirements for plausible state law assault and battery claims.  See Odom v.

Matteo, 772 F. Supp. 2d 377, 395 (D. Conn. 2011) ("To establish a claim for assault and

battery, plaintiff must prove that defendants applied force or violence to [him] and that

the application of force or violence was unlawful.") (internal quotation marks and citation

omitted); Stack v. Perez, 248 F. Supp. 2d 106, 110 (D. Conn. 2003) ("Under

Connecticut law, an assault requires an overt act evidencing an attempt to do bodily

harm, which actually falls short of a battery.") (citation omitted); Smith v. City of New

Haven, 166 F. Supp. 2d. 636, 644–45 (D. Conn. 2001) (A battery is generally defined

under Connecticut law as "any touching of the person in rudeness or in anger.")

      To the extent that the assault and battery claims are asserted against defendants

Danek, White, Charter, Putnam, Usluca, Paxton, Cheney, and Swol in their official

capacities, there is no allegation that the state has waived its sovereign immunity to

have its officials be sued in their official capacity as to any assault or battery claims for

monetary damages.  Accordingly, the assault and battery claims against the defendants

in their official capacity for monetary damages are dismissed as barred by sovereign immunity.  See 28 U.S.C. § 1915A(b)(2).  Because neither statutory nor sovereign immunity bars claims against the defendants, in their individual capacities, as to intentional or reckless assault or battery, the state law assault and battery claims will proceed against defendants Danek, White, Charter, Putnam, Usluca, Cheney, Paxton, and Swol in their individual capacities.

## ORDERS

The court enters the following Orders:

(1)      The federal claims seeking monetary damages from the defendants in their official capacities; the state law assault and battery claim against defendants Danek, White, Charter, Putnam, Usluca, Paxton, Cheney, and Swol in their official capacities; and the state law negligence claim for money damages against the defendants in their individual and official capacities are **DISMISSED** with prejudice pursuant to section 1915A(b)(2) of title 28 of the United States Code.

The requests for declaratory and injunctive relief; all claims against defendants Semple, Black, and Quiros; the First Amendment retaliation claims against defendants Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, White, and Kelly; the Eighth Amendment deliberate indifference to medical needs against defendants Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, and Kelly; and the Eighth Amendment claim of supervisory liability for excessive force against Chapdelaine are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

The Eighth Amendment claims of excessive force will proceed against Danek, White, Charter, Putnam, Cheney, Usluca, Paxton, and Swol in their individual

capacities; the Eighth Amendment claims of deliberate indifference to safety/failure to protect from harm and failure to intervene will proceed against defendants Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, and White in their individual capacities; the Eighth Amendment conditions of confinement claims will proceed against defendants Chapdelaine, Mudano, Guadarrama, Anaya, Baymon, Prior, Danek, White, Kelly, Swol, and Usluca in their individual capacities; the Eighth Amendment claims of deliberate indifference to medical needs will proceed against Danek, White, Pryor, Doe, and Markland in their individual capacities; the First Amendment retaliation claims, as set forth in paragraphs 102 and 103 of the Complaint, will proceed against defendants Cheney, Putnam, and Swol in their individual capacities and the state law assault and battery claims will proceed against Danek, White, Charter, Putnam, Usluca, Paxton, Cheney, and Swol in their individual capacities.

Smalls is hereby notified that the Clerk **cannot** serve the Complaint on defendant Nurse Jane Doe without knowing her first and last name.  Smalls will have ninety (90) days from the date of this Order to conduct discovery and file a notice identifying this defendant by her first and his last name.  Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the court will dismiss the case without further notice as to any defendant whom Smalls does not identify by first and last name within the time specified.

(2)     Within twenty-one (21) days of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Warden Chapdelaine, Deputy Warden Mudano, Deputy Warden Guadarrama, Captain Anaya, Captain Baymon, Lieutenant Prior, Lieutenant Michael Danek, Lieutenant

Michael White, Correctional Officer Charter, Correctional Officer Cheney, Correctional

Officer Paxton, Correctional Officer Putnam, Correctional Officer Swol, Correctional

Officer Usluca, Correctional Officer Kelly, and Nurse Markland and mail a copy of the

Complaint, this Order, and a waiver of service of process request packet to each

defendant in his or her individual capacity at his or her current work address.   On the

thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of

each request.  If any defendant fails to return the waiver request, the Clerk shall arrange

for in-person service by the U.S. Marshals Service, and the defendant shall be required

to pay the costs of such service in accordance with Federal Rule of Civil Procedure

4(d).

(3)     Defendants Chapdelaine, Mudano, Guadarrama, Baymon, Anaya, Danek,

White, Prior, Charter, Putnam, Cheney, Usluca, Paxton, Swol, Kelly, and Markland shall

file their response to the Complaint, either an Answer or Motion to Dismiss, within sixty

(60) days from the date the Notice of Lawsuit and Waiver of Service of Summons forms

are mailed to them.  If the defendants choose to file an answer, they shall admit or deny

the allegations and respond to the cognizable claims recited above.  They may also

include any and all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37,

shall be completed within six months (180 days) from the date of this Order.  Discovery

requests need not be filed with the court.

(5)     All motions for summary judgment shall be filed within seven months (210

days) from the date of this order.

(6)       The Pro Se Prisoner Litigation Office shall send a courtesy copy of the

Complaint and this order to the Connecticut Attorney General and the Department of

Correction Legal Affairs Unit.

    **SO ORDERED.**

    Dated at New Haven, Connecticut this 30th day of April 2019.


                                /s/ Janet C. Hall
                                Janet C. Hall
                                United States District Judge